UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL ACTION |
| VERSUS | * | NO. 21-31 |
| BRYAN JACOB | * | SECTION "T" (2) |

## ORDER AND REASONS

Before me is Defendant Bryan Jacob's Motion to Reconsider and Amend the Order of Detention. ECF No. 142. The Government filed an Opposition Memorandum. ECF No. 148. The Court held a hearing on April 5, 2023, during which Defendant introduced exhibits 1-3 and the court admitted without objection. The Court also heard testimony from two witnesses (defendant's mother Adonis Joseph and his uncle also named Bryan Jacob) for the defense and one witness (USPO Burch) for the Government.

At the conclusion of the April 5, 2023 hearing, the Court took the matter under advisement. Having considered the record, the evidence, the argument of counsel, and the applicable law, Defendant's Motion to Reconsider and Amend the Order of Detention (ECF No. 142) is DENIED for the reasons stated herein.

I.   **BACKGROUND**

On March 19, 2021, the Grand Jury indicted Defendant Bryan Jacob, among others, relating to a shoot-out at the Jung Hotel on December 28, 2020. ECF No. 1. The indictment charges Defendant Jacob with conspiring to possess firearms in furtherance of a drug trafficking crime, using, brandishing and discharging a firearm in furtherance of a drug trafficking crime, conspiracy to possess with intent to distribute controlled substances, and maintaining a drug-involved premises. *Id*. Counts 1, 2, 3 & 4. After Defendant Jacob's June 21, 2022, arrest, the

1

Government moved for detention pursuant to 18 U.S.C. § 3142(f)(1)(A) and (C) and § 3142(f)(2), during which it invoked the presumption of detention arising under 18 U.S.C. § 3143(e)(3).

     A.     **The June 27, 2022 Detention Hearing**

The Court proceeded with the detention hearing on June 27, 2022, during which Jacob was represented by privately retained counsel. Defendant called only one witness, Defendant Jacob's girlfriend Terri Blake. Ms. Blake testified that she met Mr. Jacob about two years ago and had been living with him at her apartment for about 1½ years. ECF No. 148-1, Tr. at 10-11. On cross-examination, she testified that Mr. Jacob was not employed at that time but had done construction work during their relationship. *Id.* at 13-14, 18. Ms. Blake testified that she did not have a relationship with Mr. Jacob's family until after his arrest, but that he had a relationship with his family (she denied saying otherwise to the pretrial services officer) and that his mother was "committed 100 percent" to help ensure Mr. Jacob appeared for court appearances if he were released. *Id.* at 15, 25. Mr. Jacob was arrested while at Ms. Blake's house, but she denied being uncooperative and denied knowing whether or not Mr. Jacob was in the apartment at the time. *Id.* at 16-19. Ms. Blake also denied knowledge of the December 28, 2020 incident at the Jung Hotel or any information regarding Mr. Jacob's involvement in distribution of marijuana, possession of firearms, or being interviewed by the police. *Id.* at 20-21. She was aware that his friend was shot, and he took the friend to the hospital, but didn't ask about the circumstances because "people get shot all the time." *Id.* at 21. The Court asked defense counsel whether Mr. Jacob's mother was present, and counsel confirmed that she was. *Id.* at 26. Despite her presence, defense counsel elected not to call Mr. Jacob's mother as a witness during the detention hearing.

The Government proceeded to call Deputy U.S. Marshal Michael Atkins who testified that Defendant provided the New Orleans Police Department with a cell number and address shortly

after the incident, but a few weeks later when ATF agents attempted to execute the arrest warrant, he was not at that location and his phone number had been terminated. *Id.* at 27-30. His mother told agents that he was not there, she had not spoken to him, and she had no way of communicating with him. *Id.* at 30. After multiple search warrants, they eventually located the defendant and went to arrest him at the home of his girlfriend, Ms. Blake. *Id.* at 27, 30. After Deputy Marshal Atkins arrested defendant and placed him in the car, Defendant asked: "How did you find me? I don't live here. How did you find me?" *Id.* at 33-34. The Government proceeded to play the video surveillance of the gunfight at the Jung Hotel and Deputy Marshal Atkins indicated that the person holding all the bags with a face mask on was defendant Jacob. *Id.* at 36-40. Deputy Marshal Atkins also described defendant Jacob's statements to police when he brought co-defendant Malik Fernandez to the hospital for a gunshot wound, indicating that Jacob denied knowing what happened to Fernandez and denied hearing any of the 80 gunshots but admitted he was at the hotel. *Id.* at 40.

  The Government then called USPO Amy Lapointe to discuss her recommendation for detention. Officer Lapointe noted that she is not allowed to consider the allegations of the instant offense in making her recommendation without permission from the judicial officer, so her recommendation for detention was primarily based on flight risk. *Id.* at 50. She testified that defendant Jacob reported that he was homeless and living "pillar to post," had not been employed since 2021, and was otherwise reluctant to provide information relative to his family. *Id.* at 50-52. She interviewed with Ms. Blake who reported that Jacob resided with her four-to-five days of the week. *Id.* at 52. Officer Lapointe testified that, after hearing the evidence presented during the hearing, she had additional concerns regarding stability and the ability of Ms. Blake to "turn their partner over to the police." *Id.* at 53-54.

After hearing all of the evidence, the undersigned issued an Order of Detention, finding that there was not sufficient evidence that would reasonably assure the appearance of the defendant as required or the safety of the community considering the nature and circumstances of the offenses charged as well as the evidence and seriousness of the danger posed. *Id.* at 55-56; ECF No. 61. Further, defendant Jacob's conduct by not returning to the home address he provided to police, changing the phone number he provided to police, and then asking, "how did you find me," reflected a conscious effort to avoid detection by law enforcement to avoid arrest. The Court found that the Government established by a preponderance of the evidence that there were no conditions that would reasonably assure defendant's presence, established by clear and convincing evidence of his danger to the community, and further found that defendant's girlfriend Ms. Blake would not be a capable and responsible third party custodian. ECF No. 148-1 at 56-57.

B.  **The Current Motion to Reconsider Detention**

Invoking both § 3142(f) and § 3145(b),[1] movant seeks reconsideration of the June 27, 2022, Order of Detention, arguing defendant's situation has changed because he now talks to his mother on a daily basis, she has agreed that he can reside with her, and she would be willing to serve as a third party custodian. ECF No. 142-1 at 2. He also argues that, before his arrest, he had stable employment, working for his uncle on Fridays and Saturdays in 2020. *Id.* Movant also argues that he has significant community and family ties, no prior criminal history, and the weight of the evidence is not strong. *Id.* at 2-3. Defendant further disputes the assertion that he tried to avoid arrest and argues that home detention with an ankle monitor would adequately assure his appearance. *Id.* at 3.

---

[1] ECF No. 142-1 at 1 (citing 18 U.S.C. §§ 3142(f) and § 3145(b)).

The Government opposes the motion, arguing that defendant has not presented "new evidence that has a material bearing" on the relevant issues, as required to justify re-opening detention under § 3142(f). ECF No. 148 at 2-4. It further argues that "new" testimony from existing witnesses who may have changed their minds from their earlier positions (i.e., defendant's mother and uncle) does not constitute "new" evidence because Jacob certainly knew about his own employment history and could have disclosed that previously and his mother was in court for the original hearing but was not called to testify. *Id.* at 4-5. Even if it were "new" evidence, the Government argues, that information has no material bearing on the Court's earlier analysis of the § 3142(g) factors. *Id.* at 6-9.

## II.   APPLICABLE LAW AND ANALYSIS

### A. Bail Reform Act

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, requires pretrial release of a defendant under the least restrictive condition, or combination of conditions, that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. 18 U.S.C. § 3142(c). If, after a hearing pursuant to § 3142(f), the court finds that there is no such condition or combination of conditions of release, the court shall order that the defendant be detained before trial. 18 U.S.C. § 3142(e)(1).

> At the detention hearing, the court must consider the available information concerning:
>
> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance, firearm, . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g). When determining whether the defendant's risk of flight warrants detention, the court must find by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance at trial; the court's determination that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2).[2] Either the lack of reasonable assurance of the defendant's appearance *or* the safety of others or the community is sufficient; both are not required.[3]

The existence of probable cause to believe that the defendant committed a crime under the Controlled Substances Act, 21 U.S.C. §§ 801-971, that carries a maximum term of imprisonment of ten years or more or under certain specified offenses of the Federal Gun Control Act, 21 U.S.C. § 924(c), creates a rebuttable presumption that no conditions of release exist that would reasonably assure the appearance of the person as required and the safety of the community.[4] The § 3142(e) rebuttable presumption shifts to defendant only the burden of producing rebutting evidence, not the burden of persuasion; however, the mere production of some evidence does not completely rebut the presumption.[5] The presumption is not a mere "bursting bubble" that totally disappears from consideration after a defendant comes forward with evidence; it remains in the evidentiary balance and the mere production of evidence does not completely eliminate the presumption.[6] In

---

[2] *See also United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).
[3] *Fortna*, 769 F.2d at 249 (citing cases).
[4] 18 U.S.C. § 3142(e)(3)(A); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992).
[5] *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989).
[6] *Id*. at 798–99 (citation omitted).

making its ultimate determination, the court may consider Congress' finding that drug offenders pose a special risk of flight and dangerousness to society."[7] Indeed, the risk of continued drug trafficking while on bail constitutes a risk to the community.[8]

The rebuttable presumption applies to this case because Jacob has been charged by indictment with violations of the Controlled Substances Act and § 924(c) of the Federal Gun Control Act. 18 U.S.C. § 3142(e)(3)(A), (B). [9]

B. **Section 3145(b) Review of Detention**

Setting aside the potential issue of whether a § 3145(b) motion must be raised no later than 14 days after the original detention decision unless based on due process,[10] a § 3145(b) motion must be filed with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b). This phrase is interpreted to mean that the motion must be filed before a district judge, not a magistrate judge:[11] "The hierarchy suggested by § 3145(a) is consistent with the ultimate decision-making power and continuing jurisdiction over the actions of magistrate judges that district court judges possess."[12]

---

[7] *Hare*, 873 F.2d at 798–99.
[8] *Rueben*, 874 F.2d at 586 (citing *Hare*, 873 F.2d at 798).
[9] *United States v. Jackson*, 845 F.2d 1262, 1265 (5th Cir. 1988); *see also Kaley v. United States*, 571 U.S. 320, 328 (2014) ("[A]n indictment fair upon its face, and returned by a properly constituted grand jury . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged.") (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)) (internal quotation marks and citation omitted); *see* ECF No. 1.
[10] *Compare United States v. Pineda-Diaz*, Cr. No. 20-004, 2020 WL 2747421, at *1 (N.D. Tex. May 26, 2020) (citation omitted) (holding that a defendant must seek review of a magistrate judge's detention order within 14 days pursuant to FED. R. CRIM. P. 59(a)) with *United States v. Doby*, 928 F.3d 1199, 1205-06 (10th Cir. 2019) (holding that Rule 59's 14-day limit does not apply to a § 3145(b) motion because a magistrate judge addresses § 3142 detention via a statutory grant of powers under 28 U.S.C. § 636(a), not a district judge's referral matter under § 636(b)). The Fifth Circuit has not addressed the issue.
[11] *United States v. Cisneros*, 328 F.3d 610, 615 (10th Cir. 2003) (discussing subsection (a)).
[12] *Id*. (citations omitted).

A district judge may refer a § 3145(b) motion to a magistrate judge for recommendation, but a magistrate judge is otherwise without authority to address a § 3145(b) motion.[13] Thus, to the extent Defendant seeks relief under § 3145(b), that motion must be filed with the district judge in the first instance, and absent a referral, must be resolved by the district judge. Accordingly, the requested relief from the undersigned is not available pursuant to § 3145(b) and must be denied.

### C. Re-Opening Detention Under § 3142(f)

The court may reopen the matter of detention at any time before trial if the court finds that information exists that: (1) "was not known to the movant at the time of the hearing" and (2) "has a material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community."[14] This standard is two-pronged and requires the movant to present information that is both new and material to the defendant's risk of flight or danger to the community.[15]

Section 3142(f) is "not properly employed as a vehicle for granting a do-over to present evidence that a defendant knew he could have investigated before the detention hearing."[16] It thus precludes a party from a second bite of the detention apple unless there is some demonstrated legitimate reason for not having initially presented the evidence.[17] Courts interpreting "new and material information" for purposes of § 3142(f) require "truly changed circumstances, something unexpected, or a significant event," and courts have interpreted the requirements of this provision

---

[13] *United States v. Parrish*, Cr, No. 19-160, 2021 WL 4046741, at *4 (N.D. Tex. March 26, 2021) (citing *United States v. Cooper*, Cr. No. 16-60, 2018 WL 1916983, at *17-*19 (N.D. Tex. Apr. 2, 2018)), *R.&R. adopted*, 2021 WL 4034516 (N.D. Tex. Sept. 3, 2021).
[14] 18 U.S.C. § 3142(f)(2); *see also United States v. Stanford*, 367 F. App'x 507, 510 (5th Cir. 2010) (the standard asks "whether any 'new' information was presented"); *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989)).
[15] *Stanford*, 367 F. App'x at 510 (explaining that the information must be new).
[16] *United States v. Munguia*, Cr. No. 19-191, 2020 WL 1471741, at *4 (N.D. Tex. Mar. 26, 2020) (citation omitted); *Hare*, 873 F.2d at 799 (testimony of family and friends regarding appearance in prior prosecutions was not new evidence).
[17] *United States v. Flores*, 856 F. Supp. 1400, 1405 (E.D. Cal. 1994); *see also United States v. Bowens*, No. CR-07-5442, 2007 WL 2220501, at *3 (D. Ariz. July 31, 2007).

strictly.[18] "New counsel and/or a better argument is not new information within the meaning of § 3142(f)."[19]

If, at the time of the original detention hearing, the defendant is aware of certain information, that later information cannot thereafter be characterized as new information that was unavailable at the time of the original hearing.[20] Further, district courts within the Fifth Circuit interpret § 3142(f)'s "not known to the movant at the time of the hearing" language to mean not just actual knowledge, but also constructive knowledge, i.e., knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to the defendant.[21] These courts reason that a defendant cannot forego an opportunity to confront a witness and elicit favorable testimony, and then later claim the testimony he or she failed to elicit would constitute new information[22] because a defendant cannot re-open detention to present evidence that he could have investigated before the detention hearing.[23] Most courts in other jurisdictions agree with this strict interpretation of § 3142(f).[24]

---

[18] *United States v. Morris*, 452 F. Supp. 3d 484, 487 (N.D. Tex. 2020); *United States v. Rodriguez*, Cr. No. 20-565, 2022 WL 992739, at *1 (N.D. Tex. Apr. 1, 2022) (Ramirez, M.J.) (citing *United States v. Jerdine*, No. 08-481, 2009 WL 4906564 (N.D. Ohio Dec. 18, 2009) (affirming district court's decision not to reopen detention hearing based on proffered testimony of defendant's family members and a friend, because the proffered information was not new); *cf. United States v. Rodriguez-Adorno*, 606 F. Supp. 2d 232, 238-239 (D.P.R. 2009).
[19] *United States v. Cisneros-Monje*, No. 20-159, 2022 WL 2757400, at *1 n.1 (E.D. Cal. July 14, 2022).
[20] *United States v. Green*, 793 F. App'x 223, 225 (5th Cir. 2019) (denying § 3142(f) motion to modify "no firearm" restriction to allow defendant to maintain one rifle at his home for protection against wildlife in the winter where he knew that wildlife inhabited the area at the initial hearing).
[21] *United States v. Chappell*, Cr. No. 17-361, 2017 WL 11517833, at *3 (N.D. Tex. Oct. 10, 2017) (rejecting argument that employer's willingness to testify and serve as a third-party custodian constituted new information because defense counsel failed to contact employer before the hearing when he knew defendant was employed and the employer could potentially testify even though he did not know whether the employer would serve as a third party custodian because he knew he could ask his employer that before the original hearing but failed to do so).
[22] *Munguia*, 2020 WL 1471741, at *3.
[23] *Chappell*, 2017 WL 11517833, at *4 (citations omitted).
[24] *United States v. Dillon*, 938 F.2d 1412 (1st Cir. 1991) (affirming denial of motion to reopen where new affidavits and letters attesting to character which were authored by persons who attended the original detention hearing because those persons could have written or testified at the initial hearing); *United States v. Cartagena-Mederos*, 888 F. Supp. 2d 211, 213 (D.P.R. 2012) (affirming denial of a motion to reopen where defendant "had sufficient time to prepare witnesses for questioning and failed to ask questions of the witnesses that should have been raised during the initial hearing) (citation omitted). *But see United States v. Bills*, Cr. No. 19-00069, 2019 WL 1901643, at *5 (M.D. Tenn. Apr. 29, 2019) (applying "complete lack of diligence" standard to § 3142(f)).

In this case, movant essentially argues he has two "new" pieces of evidence: (1) testimony regarding his prior employment with his uncle and (2) the repaired relationship with his mother and her new willingness to serve as a third party custodian.[25]

### 1. Uncle's Testimony Regarding Defendant's Employment

Under no circumstances is the evidence and testimony regarding defendant Jacob's past employment with his uncle "new" evidence under § 3142(f). A new affidavit does not satisfy §3142(f)'s standard for new evidence because, although the affidavit was only recently obtained, the *information* in the affidavit was known to defendant at the time of the detention hearing.[26] Although Jacob's uncle did not testify at the June 2022 hearing, defendant himself certainly knew, at the time of the initial hearing, the dates and period during which he worked for his uncle, and he could have provided that information to the pretrial services officer before the hearing. He did not. Instead, he simply told USPO Lapointe that he was unemployed and had last worked in 2021. Defendant's girlfriend, however, did testify at the hearing about his employment. She testified that he had worked construction during their relationship (which ran from early 2021 - June 2022), which testimony is consistent with the "new" evidence supplied by defendant's uncle at the hearing. Accordingly, the Uncle's evidence regarding Defendant's past employment cannot be characterized as "new" evidence that would justify reopening the detention under § 3142(f).

### 2. The Repaired Relationship With Defendant's Mother

The second piece of "new" evidence is Defendant's repaired relationship with his mother and her new willingness to serve as a third party custodian. The Fifth Circuit has twice rejected

---

[25] ECF No. 142-1 at 2. He also reiterates § 3142(g) arguments regarding community and family ties, argues the weight of the evidence for one of the four charges (the gun offense) is not strong, and that Defendant's presence in court could be ensured by home detention with ankle monitoring and that he did not attempt to avoid arrest. *Id*. at 2-4.

[26] *United States v. Reddy*, Cr. No. 19-597, 2020 WL 1862564, at *2 (N.D. Tex. Apr. 13, 2020) (citing *Munguia*, 2020 WL 1471741, at *3 (courts have interpreted § "3142(f)'s 'not known to the movant at the time of the hearing' 'language to mean not just actual knowledge, but also constructive knowledge, i.e., knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person.'")).

10

arguments that new testimony from existing family members constitutes "new evidence" under § 3142(f).[27] Lower courts within the Fifth Circuit have similarly rejected the argument that a known family member or friend who has a change of heart or only later offers to serve as a custodian satisfies the new evidence requirement.[28]

In this case, Defendant's mother was present at the initial hearing, but for whatever reasons, Defendant elected not to call her as a witness or ask her any questions. While the re-established relationship between Defendant and his mother is commendable, that does not constitute new evidence under § 3142(f). Even if it did, her willingness to serve as a third party custodian does not alter the Court's prior analysis of the § 3142(g) factors.

D. **Consideration of the 3142(g) Factors**

1. **Nature and Circumstances of the Offense Charged**

Defendant is charged with conspiring to possess firearms in furtherance of a drug trafficking crime; using, brandishing and discharging a firearm in furtherance of a drug trafficking crime; conspiracy to possess with intent to distribute controlled substances; and maintaining a drug-involved premises. ECF No. 1. These charges reflect drug crimes and crimes of violence, one of which includes a mandatory minimum term of 10 years imprisonment that must run consecutively to any other term of imprisonment. ECF No. 148 at 6-7. Additionally, a co-defendant faced with the same charges was recently sentenced to 30-years in prison for these

---

[27] *See Hare*, 873 F.2d at 799 (stating that testimony of family and friends that defendant appeared when required prior to prosecution and exemplary conduct while under detention is not § 3142(f) new evidence material to the issues under § 3142(g)); *Stanford*, 341 F. App'x at 984 (rejecting "new evidence" argument where defendant had the opportunity to call witnesses, neither called nor asked for more time to locate witnesses, and later introduced affidavits of friends, family, and former employees, most of whom were present at the initial hearing).

[28] *United States v. Miller*, No. 20-71, 2021 WL 490248, at *2 (E.D. Tex. Feb. 10, 2021) (new friend's willingness to serve as a custodian not new evidence under Hare); *Parrish*, 2021 WL 4046741; Chappell, 2017 WL 11517833, at *4 (defendant's employer's later agreement to serve as a custodian was not the "kind of information that qualifies as 'information ... that was not known to the movant at the time of the hearing'" because, although defendant did not know that the employer would be willing to serve as a third-party custodian and allow him to live with him, he knew that he could ask his employer whether he would be so willing.)

violations. *Id.* Further, the charges stem from a gunfight in a hotel during which over 80 shots were fired. The nature and circumstances of the offenses charged, both insofar as these serious charges create a serious risk of flight and the significant danger posed to the community, weigh against release.

### 2. Weight of the Evidence

Although defense counsel argues that the weight of the evidence on the gun offense is not strong (ECF No. 142-1 at 3), that ignores the weight of the evidence as to the other charges. Indeed, the video surveillance and other evidence reflects Defendant's active involvement with others in drug trafficking while having numerous guns in the immediate vicinity. Further, the evidence reflects Jacob taking an active role in attempting to hide or re-locate the drugs from the room in which the shootout occurred when he handed another person an orange bag which was then filled with vacuum sealed bags of marijuana. These facts, coupled with the ten guilty pleas already entered in this case, indicate that the weight of the evidence is strong. This factor weighs against release.

### 3. History and Characteristics of the Person

Defendant's lifelong residence in the New Orleans metropolitan area and lack of criminal history, as well as the fact that he was not on any supervised release or probationary status at the time of the incident, run in his favor. In terms of family ties, Defendant admitted to being the father of a child, but he provided no information about his son or whether he has any contact with him. At the time of the initial hearing, he was estranged from his mother and reported living "pillar to post," although he has now reconnected to develop a relationship with his mother. Defendant's conduct, however, in not returning to his mother's home which was the address he provided to police at the hospital, changing his phone number after providing same to officers at the hospital,

lying about how Fernandez was shot or hearing any gunfire, and attempting to avoid arrest all weigh heavily against Defendant's character. Thus, although Defendant presented some evidence on this issue, he has not demonstrated that his ties to this area are sufficient to reasonably assure his appearance at trial, especially in light of his prior effort to avoid law enforcement. This factor is, at best, neutral.

### 4. The Nature and Seriousness of the Danger Posed by Release

Given the events surrounding the December 28, 2020 incident at the Jung Hotel—participating in drug transactions at a public hotel while heavily armed where a gunfight broke-out during which 80 shots were fired blindly, around corners, with no concern for any hotel occupants in the nearby rooms—the serious nature of the danger posed by Defendant's release cannot be understated. Further, "the risk of continued narcotics trafficking. . . constitute[s] a risk to the community."[29] Given Defendant's propensity for dishonesty and prior efforts to avoid arrest, as well as the significant incarceration period faced by him based on the charges, the risk that electronic monitoring could be removed before flight is unacceptable. This factor weighs against release.

## III.   CONCLUSION

Defendant's motion presents no "new" evidence material to the Court's earlier determination that Jacob poses a danger to the community and significant flight risk for which no condition or combination of conditions of pretrial release will rectify. Even if the evidence newly presented qualified as "new and material" under § 3142(f), the evidence does not change the court's analysis finding clear and convincing evidence of danger and serious risk of flight by a preponderance of the evidence.

---

[29] *Rueben*, 974 F.2d at 586 (citing *Hare*, 873 F.2d at 798 (internal citation omitted)).

Accordingly, for the prior reasons as well as the foregoing reasons,

IT IS ORDERED that Defendant's Motion to Reconsider and Amend the Order of Detention (ECF No. 142) is DENIED.

New Orleans, Louisiana, this __10th__ day of April, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE